**E-Filed 7/6/2010**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

MICHAEL A. KENT, BOYD DAUGHERTY, DANIEL JOHANNING, AND JAKUB CMIRAL, individually and on behalf of all those similarly situated,

Plaintiffs,

v.

HEWLETT-PACKARD COMPANY, a Delaware corporation,

Defendant.

Case Number 09-5341 JF (PVT)

ORDER[1] GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS WITH LEAVE TO AMEND

[re: docket no. 25]

Defendant Hewlett-Packard Company ("HP") moves pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss Plaintiffs' first amended complaint. The Court has considered the moving and responding papers and the oral arguments of counsel presented at the hearing on May 7, 2010. For the reasons discussed below, the motion will be granted in part and denied in part, with leave to amend.

## I. BACKGROUND

On November 12, 2009, Plaintiff Michael A. Kent ("Kent") filed the instant putative class

[1] This disposition is not designated for publication in the official reports.

action on behalf of purchasers of Hewlett-Packard Pavilion Elite series computers. On February 25, 2010, Kent filed his first amended complaint ("FAC"), naming as additional Plaintiffs Jakub Cmiral ("Cmiral"), Boyd Daugherty ("Daugherty"), and Daniel Johanning ("Johanning") (collectively, "Plaintiffs"). The FAC alleges (1) unlawful, unfair, and fraudulent business practices in violation of the California Unfair Competition Law, Cal. Bus. & Profs. Code § 17200 *et seq.* ("UCL"), (2) breach of express warranty, (3) breach of the implied warranty of merchantability, and (4) violation of the California Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* ("CLRA"). HP moves to dismiss the FAC for failure to state a claim upon which relief may be granted.

HP designs, manufactures, and sells personal computers, including the following Hewlett-Packard Pavilion Elite Series computers equipped with Pegatron "Truckee" motherboards and Intel i7 series CPUs: Pavilion Elite e9150t, e9180f, e9180t, m9600t, and m9650f (collectively, the "computers in suit"). (FAC ¶¶ 2, 3.) Plaintiffs allege that "[t]hese computers are inherently defective and are prone to frequent failures, the symptoms of which include the system becoming unresponsive or locking-up within thirty minutes [of] turning it on ('cold boot')." (FAC ¶ 2.) In its limited warranty for the computers in suit, HP "guarantees that the HP Hardware products that you have purchased . . . are free from defects in materials or workmanship under normal use during the Limited Warranty Period." (FAC ¶ 5.)

Kent, a Colorado resident, purchased an e9150t computer on July 22, 2009. (FAC ¶ 11.) Before purchasing his computer, "he visited [HP]'s online store . . . in order to compare features and prices on the various computers offered for sale." (*Id.*) He purchased the computer in reliance on "HP's representations that the HP Pavilion Elite was reliable, was free from defects, and was of merchantable quality and workmanship." (*Id.*) After two weeks, his computer began to experience errors, including lock-ups, freezes, and "blue screen" errors, requiring him to reboot the computer. (*Id.*) After searching for a potential solution by reviewing online forums, Kent installed a BIOS update from HP, but this did not resolve the problem. (*Id.*) Thirty days before filing the instant action, Kent provided notice to HP pursuant to Cal. Civ. Code § 1782, but HP has not responded to the notice. (FAC ¶¶ 82-83.)

Daugherty, a Tennessee resident, purchased an e9150t computer from HP on July 6, 2009. (FAC ¶ 12.) "Prior to purchase[,] he reviewed the e9150t's specifications and product reviews placed on . . . HP's website." (*Id.*) In purchasing the computer, Daugherty "specifically relied on HP's representations that he was purchasing a computer that was free from defects". (*Id.*) Within ten minutes of its first use, the computer exhibited the lock-up and freezing problems, requiring Daugherty to reboot it. (*Id.*) Daugherty contacted HP's customer service about the issue. (*Id.*) HP provided Daugherty with a new Vista operating system and software package, which he installed, but this did not resolve the problem. (*Id.*) Daugherty requested a refund. HP refused to provide a refund and requested that Daugherty install the Windows 7 operating system. (*Id.*) Daugherty did so, but it did not resolve the problem. (*Id.*) Daugherty again requested a refund and was refused. (*Id.*)

Johanning, a Florida resident, purchased an m9600t computer from HP in or around June 2009. (FAC ¶ 13.) He "purchased the HP Elite m9600t based, in large part, on HP's representations that it was reliable, of merchantable quality and workmanship and free from defects." (*Id.*) Johanning's computer "routinely locked up and froze each morning on a cold boot". (*Id.*) Johanning contacted HP technical support, which asked him to run diagnostic tests. (*Id.*) HP technical support determined that Johanning's wireless mouse and keyboard were the source of the problem, so it shipped him replacements. (*Id.*) The computer continued to have performance issues, so HP technical support requested that Johanning perform a system restore, but this did not resolve the problem either. Johanning then spoke with an "HP technical support person" and "asked to have his case escalated, but HP technical support refused." (*Id.*)

Cmiral, a California resident, purchased an e9180f computer in or around September 3, 2009. (FAC ¶ 14.) He "purchased the HP Elite e9180f based, in large part, on HP's representations that it was reliable, of merchantable quality and workmanship and free from defects." (*Id.*) Cmiral's computer exhibited the "blue screen" errors on the first day of use and exhibited the lock-up and freezing issues shortly thereafter. (*Id.*) At least three times, Cmiral called HP's customer service to seek help. (*Id.*) During the third call, the HP customer service representative asked Cmiral to update the computer's BIOS. (*Id.*) Having previously read

postings on internet forums stating that the BIOS update did not resolve the problem, Cmiral declined to install the updated BIOS. (*Id.*) Cmiral asked to send his computer to HP for repair, but HP denied the request because Cmiral refused to update the BIOS. (*Id.*)

Plaintiffs allege that the computers in suit incorporate defective motherboards that cause the lock-ups, freezing, and blue screen errors. (FAC ¶ 28.) They allege that HP knew, should have known, or was reckless in not knowing that the motherboards were defective. (FAC ¶ 28.) Plaintiffs point to an internet message board with 268 pages of consumers' complaints regarding the subject problems with the computers in suit. (FAC ¶ 35.)

## II. LEGAL STANDARD

A complaint may be dismissed for failure to state a claim upon which relief may be granted if a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Allegations of material fact must be taken as true and construed in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1997). However, the Court need not accept as true allegations that are conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001). *See also Twombly*, 550 U.S. at 561 ("a wholly conclusory statement of [a] claim" will not survive a motion to dismiss).

On a motion to dismiss, the Court's review is limited to the face of the complaint and matters judicially noticeable. *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986)*; N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). However, under the "incorporation by reference" doctrine, the Court also may consider documents which are referenced extensively in the complaint and which are accepted by all parties as authentic. *In re Silicon Graphics, Inc. Sec. Litig*., 183 F.3d 970, 986 (9th Cir. 1999). Leave to amend should be granted unless it is clear that the complaint's deficiencies cannot be cured by amendment. *Lucas v. Dep't of Corr*., 66 F. 3d 245, 248 (9th Cir. 1995).

In assessing whether to grant Plaintiffs another opportunity to amend, the Court considers "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure

deficiencies by previous amendments, undue prejudice to the opposing party[,] and futility of the proposed amendment." *Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1052 (9th Cir. 2001) (quoting *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir. 1989)). When amendment would be futile, dismissal may be ordered with prejudice. *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996).

Finally, although their claims arise under state law, Plaintiffs' allegations are subject to the Federal Rules of Civil Procedure. Specifically, allegations sounding in fraud are subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b). *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003) (if "the claim is said to be 'grounded in fraud' or to 'sound in fraud,' [then] the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)."); *Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir.1994) (claims based in fraud "must state precisely the time, place, and nature of the misleading statements, misrepresentations, and specific acts of fraud."). However, in the context of a fraudulent omission claim, a plaintiff cannot plead a specific time or place of a failure to act. *Washington v. Baenziger*, 673 F. Supp. 1478, 1482 (N.D. Cal. 1987). Accordingly, a plaintiff may plead fraud in alternative ways. *Id.*

## III. DISCUSSION

### A. Breach of implied warranties

Plaintiffs allege that HP breached the implied warranties of merchantability and of fitness for a particular purpose. (FAC ¶¶ 71, 72.)

#### 1. Implied warranty of merchantability

"There exists in every contract for the sale of goods by a merchant a warranty that the goods shall be merchantable." *Atkinson v. Elk Corporation of Texas*, 142 Cal. App. 4th 212, 228 (Cal. App. 6th Dist. 2006). "Merchantability" requires that a product conform to its ordinary and intended use. *See, e.g.*, *Hauter v. Zogarts*, 14 Cal. 3d 104, 117-18 (1975). Under Cal. Com. Code § 2314(2), products are merchantable if they:

> (a) Pass without objection in the trade under the contract description; and


> (b) In the case of fungible goods, are of fair average quality within the description; and
>
> (c) Are fit for the ordinary purposes for which such goods are used; and
>
> (d) Run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and
>
> (e) Are adequately contained, packaged, and labeled as the agreement may require; and
>
> (f) Conform to the promises or affirmations of fact made on the container or label if any.

The implied warranty of merchantability does not "impose a general requirement that goods precisely fulfill the expectation of the buyer. Instead, it provides for a minimum level of quality." *Am. Suzuki Motor Corp. v. Super. Ct.*, 37 Cal. App. 4th 1291, 1295 (1995) (citation omitted). Accordingly, a defect must render the product unfit for its ordinary purpose. *See id.*; *see also Isip v. Mercedes-Benz USA, LLC*, 155 Cal. App. 4th 19, 26 (Cal. App. 2d Dist. 2007) ("We reject the notion that merely because a vehicle provides transportation from point A to point B, it necessarily does not violate the implied warranty of merchantability. A vehicle that smells, lurches, clanks, and emits smoke over an extended period of time is not fit for its intended purpose.").

**a. Vertical privity is necessary**

"California courts have painstakingly established the scope of the privity requirement under California Commercial Code section 2314." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1024 (9th Cir. 2008). "A buyer and seller stand in privity if they are in adjoining links of the distribution chain." *Id.* (citing *Osborne v. Subaru of Am. Inc.*, 198 Cal. App. 3d 646, 656 n.6, (Cal. App. 3d Dist. 1988)). The FAC, read in the light most favorable to Plaintiffs, alleges that Kent, Daugherty, and Johanning purchased their computers directly from HP. (FAC ¶¶ 11-13.) Plaintiffs concede that Cmiral lacks privity with HP; accordingly, Cmiral cannot state a claim for breach of the implied warranty of merchantability.

**b. Fitness for ordinary purpose**

Plaintiffs also allege that the computers in suit are not fit for their ordinary purpose

because they are rendered "unusable" by the lock-up, freeze, and blue screen errors. Computers that routinely lock-up may be inconvenient, and a lock-up can cause the loss of data, but the question is whether the computers are unfit for their ordinary purpose. Plaintiffs do not allege that they have been forced to abandon the use of their computers completely, that the computers freeze multiple times per day, or that they in fact have lost data as a result of the malfunctions. At most, Johanning alleges that his computer "routinely locked up and froze each morning on a cold boot". (FAC ¶ 13.) The FAC does not allege how often Kent's or Daugherty's computers exhibit the subject problems. In their present form, these allegations fall short of showing that the computers are unusable or fail to serve their ordinary purpose.

**2. Implied warranty for a particular purpose**

> An implied warranty of fitness for a particular purpose arises only where (1) the purchaser at the time of contracting intends to use the goods for a particular purpose, (2) the manufacturer or seller at the time of contracting has reason to know of this particular purpose, (3) the buyer relies on the manufacturer or seller's skill or judgment to select or furnish goods suitable for the particular purpose, and (4) the manufacturer or seller at the time of contracting has reason to know that the buyer is relying on such skill and judgment.

*Harlan v. Roadtrek Motorhomes, Inc.*, No. 07-CV-0686 IEG (BLM), 2009 WL 928309, at *8 (S.D. Cal. 2009) (citing *Keith v. Buchanan*, 173 Cal. App. 3d 13, 25 (Cal. App. 2d Dist. 1985)). "A 'particular purpose' . . . 'differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question." *Id.* (quoting *Suzuki*, 37 Cal. App. 4th 1291at 1295 n.2).

Plaintiffs have not alleged that they used the computers in suit for anything other than their ordinary purpose. (*See, e.g.*, FAC ¶ 11 ("[Kent] purchased his . . . computer for personal, family or household use"), *Id.* ¶ 12 ("[Daugherty] purchased his e9150t for personal, family or household use"), *Id* ¶ 13 ("Mr. Johanning has used his . . . m9600t for its intended purpose . . ."), *Id.* ¶ 14 ("Mr. Cmiral has used his . . . e9180t for its intended purpose . . .").) Thus, Plaintiffs have not stated a claim for a breach of an implied warranty for a particular purpose.

//

**B. Breach of express warranty**

Plaintiffs allege that HP has breached the express limited warranty that accompanies each of the computers in suit. The warranties of the various computers differ slightly, but the core terms remain consistent. (*See* Loose Decl. Ex. A-C (the limited warranties for the e9150t, m9600t, and the e9180f computers, respectively).[2]) Plaintiffs allege that HP has breached the warranty by failing to provide a product free from defects in material or workmanship within the warranty period, failing adequately to repair or replace the defective component or unit, and failing to provide a refund of the purchase price. (Plaintiffs' Opp'n at 14:20-23.)

**1. Failing to provide a product free from defects**

"HP warrants that the HP Hardware Products that you have purchased or leased from HP are free from defects in materials or workmanship under normal use during the Limited Warranty Period."[3] (Loose Decl. Ex. A at 4.) "HP will, at its discretion, repair or replace any component or hardware product that manifests a defect in materials or workmanship during the Limited Warranty Period." (*Id.*) Also, "[i]n the unlikely event that your HP Hardware Product has recurring failures, HP . . . may elect to provide you with (a) a replacement . . . or (b) to give you a refund . . . .". (*Id.*)

Plaintiffs contend that because "recurring failures" are an "unlikely event," HP has warranted that the computers in suit will be "reliable" and that HP has breached that warranty because the computers in suit manifest recurring failures.[4] However, "HP does not warrant that the operation of [the] product will be uninterrupted or error-free." (*Id.* at 5.) Specifically, the

---

[2] The FAC references the warranties, (*see* FAC ¶¶ 5, 27), and no party questions the authenticity of these documents. Accordingly, the Court may consider these documents in determining the instant motion. *In re Silicon Graphics*, 183 F.3d at 986. For purposes of brevity, this discussion focuses on Exhibit A.

[3] HP does not dispute that Plaintiffs' computers still are under warranty.

[4] To the extent that the FAC claims the existence and breach of an extra-contractual warranty by description regarding the "reliability" of the computers in suit, this claim will be dismissed. The express warranty includes a disclaimer of all warranties and conditions not stated within it. (Loose Decl. Ex. A at 3.) Plaintiffs do not explain how a claim for an extra-contractual warranty by description could survive this disclaimer.

8

Case No. C 09-5341 JF
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS WITH LEAVE TO AMEND
(JFEX1)

warranty offers a remedy if the computer does exhibit recurring failures: replacement or refund. Thus, HP is not liable for breach of express warranty merely because a product manifests recurring failures during the warranty period. Rather, the question is whether Plaintiffs sought repairs, refunds, or replacements and, if so, whether HP responded appropriately under the warranty.

**2. Failing adequately to repair, replace, or refund**

HP claims that it cannot be liable for failing to repair Plaintiffs' computers because Plaintiffs – with the exception of Cmiral – never requested repairs in the first instance. The warranties provide for three types of warranty service: (1) self-repair, (2) send-in and return, and (3) carry-in. (Loose Decl. Ex. A at 7.) For self-repair service, if HP determines that this service is appropriate, it will ship the replacement parts directly to the consumer. (*Id.*) For send-in and return, HP will ship packaging to the consumer for the consumer to use to ship the product back to HP for repairs. (*Id.*) Carry-in service requires the consumer to deliver the product to a service location for repairs. (*Id.*)

While HP contends that Plaintiffs have not taken the steps required in the warranties to obtain repairs, it does not point to language in the warranty that requires consumers to follow a specific procedure for that purpose. Daugherty alleges that he contacted HP's customer service regarding the lock-up issues. (FAC ¶ 12.) Reading the FAC in the light most favorable to Plaintiffs, it appears that HP actually attempted to repair Daugherty's computer: it sent him a new Vista operating system and later requested that he install Windows 7. (*Id.*) Daugherty installed both Vista and Windows 7, but this did not resolve the problem. (*Id.*) After these measures failed, Daugherty requested a replacement computer. (*Id.*) Even if the previous measures were not "repairs", Daugherty's *refused* request for a replacement could be construed at least as a request in the alternative for a repair.

Similarly, HP appears to have attempted to repair Johanning's computer: it determined that the mouse and keyboard could have caused the lock-up errors, so it sent him replacements. (FAC ¶ 13.) HP must have understood Johanning's calls to its customer service department to be requests for repairs, because it mailed him replacement parts. Moreover, while speaking to a

customer service representative about the lock-up problems, Johanning "asked to have his case escalated". (*Id.*) Reading the complaint in the light most favorable to Plaintiffs, it may be inferred that even if Johanning was not requesting repairs up to that point in his interaction with HP, he was requesting repairs from that point forward.

Kent does not allege that he called HP's customer service to complain about the problems with his computer. Instead, Kent provided notice to HP under Cal. Civ. Code § 1782 before filing this action. Section 1782(a) provides that, 30 days before filing an action under the CLRA, a consumer must "[d]emand [in writing] that the person correct, repair, replace, or otherwise rectify the goods". Section 1782(b) provides that a consumer cannot seek damages under the CLRA if the person – in this case, HP – provides an appropriate remedy within 30 days. Kent alleges that HP did not respond to his notice within thirty days. (FAC ¶ 83.)

Cmiral is situated differently from the other Plaintiffs. He requested specifically that HP repair his computer, but he also refused HP's request that he update his computer's BIOS. (FAC ¶ 14.) HP contends that Cmiral's refusal to update his BIOS defeats his breach of warranty claim. The warranty provides that "[t]o enable HP to provide the best possible support and service during the Limited Warranty Period, you may be directed by HP to . . . load most recent firmware, install software patches, . . . or use HP remote support solutions where applicable." (Loose Decl. Ex. A at 6.) The warranty continues: "HP strongly encourages you to accept the use of or to employ available support technologies provided by HP. If you choose not to deploy available remote support capabilities, you may incur additional costs due to increased support resource requirements." (*Id.*)

Determining whether Cmiral may pursue an express warranty claim requires a construction of the warranty itself. Cmiral may be able to show that HP's refusal to offer anything other than the BIOS update was an unreasonable exercise of its discretion, depending on whether the BIOS update is viewed as "support technology" or as part of HP's "self-repair warranty service." If the updated BIOS is viewed as "support technology", the warranty does not appear to *require* Cmiral to install it. Instead, he is "strongly encouraged" to install it. However, if the updated BIOS is considered part of a "self-repair warranty service", Cmiral's refusal to

install it is more damaging to his claim. The warranty gives HP the discretion to determine which repair service applies and whether to replace the unit or refund the purchase price in lieu of a repair. At the same time, the warranty does not appear to allow a consumer to dispute HP's determination to offer a particular repair, even if that determination is unreasonable. The Court is unable to determine the proper construction without more factual context, and because Cmiral's proffered construction of the warranty is not implausible, Cmiral has stated a claim for breach of express warranty.

**C. CLRA claim**

The CLRA proscribes "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a). Plaintiffs allege that HP violated Cal. Civil Code §§ 1770(a)(5), (7), and (9) by misrepresenting information related to the computers in suit and omitting material information about existing defects within HP's knowledge.

**1. CLRA claim for misrepresentation**

The CLRA proscribes active misrepresentations about the standard, quality, or grade of goods. *Morgan v. Harmonix Music Sys., Inc.,* No. C08-5211 BZ, 2009 WL 2031765, at *3 (N.D. Cal. July 07, 2009) (citing *Outboard Marine Corp. v. Superior Court,* 52 Cal. App. 3d 30, 36 (1972)). "California requires a plaintiff suing under the CLRA for misrepresentations in connection with a sale to plead and prove she relied on a material misrepresentation." *Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 946 (S.D. Cal. 2007) (citing *Caro v. Procter & Gamble Co.*, 18 Cal. App. 4th 644, 668 (Cal. App. 4th Dist., 1993)).

**a. HP's alleged misrepresentation**

HP warranted that the computers in suit would be "free from defects in materials or workmanship under normal use during the Limited Warranty Period." (Loose Decl. Ex. A at 4.) Plaintiffs contend that this statement is a misrepresentation because the computers in suit have manifested defects during the warranty period. However, HP's representation appears in the limited warranty that accompanied the computers. As discussed above, HP did not guarantee

that the operation of the computers in suit would be "uninterrupted or error-free." (Loose Decl. Ex. A at 5.) Instead, HP warranted that it would offer repairs, replacements, or refunds in the event that defects did manifest during the warranty period. *See Hoey v. Sony Elecs. Inc.*, 515 F. Supp. 2d 1099, 1104 (N.D. Cal. 2007) (rejecting the plaintiffs' attempt to "bootstrap" Sony's express warranty into a misleading representation for purposes of the CLRA).

Relying heavily upon *McAdams v. Monier, Inc.*, 182 Cal. App. 4th 174 (Cal. App. 3d Dist. 2010), Plaintiffs contend that a warranty of freedom from defects can create liability under the CLRA where the seller knows of a defect that will surface during the warranty period and does not disclose it. In *McAdams*, the class action plaintiffs alleged that the defendant warranted that, for fifty years, its roof tiles would be free of defects, maintain a permanent color glaze, and require no maintenance, despite knowing that the tiles would deteriorate within fifty years. *Id.* at 179. The court focused on whether the class members could show common reliance and whether the named plaintiff was typical of the class, determinations that are not relevant here. The court allowed the CLRA class action to proceed based on the plaintiffs' exposure to the fifty-year warranty coupled with the defendant's failure to disclose the defect despite his knowledge of the defect.

In the instant case, Plaintiffs have not alleged sufficiently that HP knew that defects would manifest during the warranty period. Because the allegation of a misrepresentation sounds in fraud, it must meet the heightened pleading requirements of Fed. R. Civ. P. 9(b). *See Ciba-Geigy*, 317 F.3d at 1103-04. Plaintiffs allege that HP failed to "adequately manufacture and/or test" the computers in suit. (FAC ¶ 32.) However, they do not allege any specific facts to support their claim: they do not explain how the computers in suit were inadequately manufactured or what testing was done or should have been done instead. Plaintiffs do point to a series of online postings that complain of failures of the computers in suit. (FAC ¶ 35.) However, they do not allege that HP knew of these complaints at the time it sold the computers to Plaintiffs. *See Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 975 n.9 (N.D. Cal. 2008) (concluding that "[r]andom anecdotal examples of disgruntled customers posting their views on websites at an unknown time is not enough to impute knowledge upon defendants."). Although

they contend that "HP had exclusive knowledge of material facts concerning the nature and existence of the defective motherboards," (FAC ¶ 34), Plaintiffs do not allege what that knowledge is or how HP acquired it. Nor do Plaintiffs allege with particularity that HP had knowledge of the defective motherboards at the time Plaintiffs purchased the computers in suit. *Compare Marsikian v. Mercedes Benz USA, LLC*, No. CV 08-04876 AHM (JTLx), 2009 U.S. Dist. LEXIS 117012 (C.D. Cal. May 4, 2009) (noting that the plaintiffs alleged that "[s]ince 2001, [d]efendant did know about the defective [part] as a result of its own internal testing, customer complaints, dealership repair orders, as well as various other sources).

**b. Plaintiffs' reliance**

Moreover, even assuming that HP's warranty was misleading in and of itself, Plaintiffs do not adequately plead reliance. *Cattie*, 504 F. Supp. 2d at 946 (citing *Caro*, 18 Cal. App. 4th at 668) ("California requires a plaintiff suing under the CLRA for misrepresentations in connection with a sale to plead and prove she relied on a material misrepresentation."). The allegedly misleading statement – that the computers in suit would be free of defects during the warranty period – is found in the express warranty itself. However, Plaintiffs do not allege pre-purchase knowledge of the warranty.

Kent alleges that:

> Prior to purchasing his computer, he visited Defendant HP's online store . . . in order to compare features and prices on the various computers offered for sale. In selecting the HP Pavilion Elite series computers, Plaintiff Kent relied on HP's representations that the HP Pavilion Elite was reliable, was free from defects, and was of merchantable quality and workmanship . . . .

(FAC ¶ 11.) Kent alleges that he visited HP's website and that he relied on HP's representations contained within the warranty. However, while it is true that warranty can be found on HP's website, (FAC ¶ 5), Kent does not allege that he actually reviewed the warranty itself; he claims only that he compared features and prices on HP's computers. This allegation is insufficiently particular for purposes of Fed. R. Civ. P. 9(b). Daugherty's allegations similarly are insufficient: while "he reviewed the e9150t's specifications and product reviews" on HP's website, (FAC ¶ 12), Daugherty does not allege having reviewed the warranty itself. Cmiral and Johanning provide entirely conclusory allegations of reliance, stating only that they "purchased the

[computers in suit] based, in large part, on HP's representations that it was reliable, of merchantable quality and workmanship and free from defects." (FAC ¶¶ 13, 14.)

//

**2. CLRA claim for omissions**

"A claim under the CLRA may be based on a fraudulent omission if (1) the omission was contrary to a representation actually made by the defendant, or (2) the omission was of a fact the defendant was obliged to disclose." *In re NVIDIA GPU Litig.*, NO. C 08-04312 JW,2009 WL 4020104, at *10 (N.D. Cal. Nov. 19, 2009) (citing *Daugherty v. American Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 835 (Cal. App. 2d Dist. 2006). With respect to a claim based on an omission contrary to a representation actually made by HP, Plaintiffs' claim fails because the only representation by HP identified by Plaintiffs is found in the express warranty. As discussed above, HP did not represent that the operation of the computers in suit would be "uninterrupted or error-free." (Loose Decl. Ex. A at 5.) Thus, an omission relating to defects that might occur during the warranty period is not contrary to the representations within the warranty.

With respect to disclosure, "[t]he obligation to disclose can arise in four circumstances: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material fact." *NVIDIA*, 2009 WL 4020104 at *10 (quoting *Falk v. General Motors Corp.*, 496 F. Supp. 2d 1088, 1094-95 (N.D. Cal. 2007)).

Plaintiffs contend that HP actively has concealed material facts concerning the computers in suit, specifically that the motherboards are defective. (FAC ¶ 7.) Allegations of active concealment sound in fraud, and thus must meet the heightened pleading requirements of Fed. R. Civ. P. 9(b). *See Ciba-Geigy*, 317 F.3d at 1103-04. Plaintiffs do not allege the existence of a fiduciary relationship, and their allegation with respect to HP's exclusive knowledge is insufficient, as discussed above. Plaintiffs do allege that HP has concealed or suppressed material facts. Johanning alleges that after purchasing his computer, he called HP technical support, seeking a solution to the lock-up issue. (FAC ¶ 13.) He asked HP if it knew of others

experiencing the same problem. (*Id.*) HP responded "no", even though Johanning "could hear another HP technical support person speaking with someone experiencing the exact same problems." (*Id.*) Read in the light most favorable to Plaintiffs, this allegation suggests that HP was attempting to conceal the fact that the computers in suit suffer from a widespread lock-up issue.

However, CLRA proscribes only "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person *in a transaction intended to result or which results in the sale or lease* of goods or services to any consumer." Cal. Civ. Code § 1770(a) (emphasis added). Johanning's discussion with HP technical support occurred *after* he already had purchased his computer. Even if that conversation could support an allegation of concealment, it cannot support an allegation of unfair practices undertaken with the intent to result in a sale. Thus, the conversation above cannot support an alleged CLRA violation. Plaintiffs have not alleged with specificity any other facts that could support a claim that HP knew the computers in suit were defective at the time of sale or that HP actively concealed a defect at the time of sale.

**D. UCL Claim**

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Civ. Code § 17200. Accordingly, "[a]n act can be alleged to violate any or all of the three prongs of the UCL – unlawful, unfair, or fraudulent." *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1554 (2007). Plaintiffs allege that HP has violated all three prongs. Their allegations at least as to the UCL's fraud prong must meet the heightened pleading requirements of Fed. R. Civ. P. 9(b). *See Ciba-Geigy*, 317 F.3d at 1103-04.

**1. Unlawful conduct**

For an action based upon an allegedly unlawful business practice, the UCL "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). In their opposition papers, Plaintiffs rely exclusively upon their CLRA claim. (Plaintiffs' Opp'n at 13:20-22.) As discussed above, Plaintiffs' CLRA claim is

insufficient because the FAC does not plead with specificity any misrepresentation or a duty to disclose a specific alleged defect. The Court need not accept the FAC's conclusory allegation that HP has violated the California False Advertising Law. (FAC ¶ 48); *see Sprewell,* 266 F.3d at 988. Plaintiffs also allege that HP's breach of its express warranty is unlawful conduct under the UCL. (FAC ¶ 48.) This allegation is better analyzed under the "unfairness" prong. *See Smith v. Wells Fargo Bank, N.A.*, 135 Cal. App. 4th 1463, 1483 (Cal. App. 4th Dist. 2005) (citing a series of California appellate court decisions and concluding that "it appears that a systematic breach of certain types of contracts (e.g., breaches of standard consumer or producer contracts involved in a class action) can constitute an unfair business practice under the UCL.").

**2. Unfair conduct**

What constitutes unfair conduct in consumer actions under the UCL is unclear. *Camacho v. Automobile Club of Southern California*, 142 Cal. App. 4th 1394, 1400 (Cal. Ct. App. 2006). *Camacho* holds that "unfairness" under the UCL should be judged by the same standard used by the Federal Trade Commission under 15 U.S.C. § 45(n). *Id.* at 1403. 15 U.S.C. § 45(n) provides three elements for what constitutes "unfair": 1) substantial injury, 2) the complained-of practice is not outweighed by any countervailing benefits to consumers or competition, and 3) the injury must be one that consumers themselves could not reasonably have avoided. *See also Davis v. Ford Motor Credit Co.*, 179 Cal. App. 4th 581, 584 (Cal. App. 2d Dist. 2009) (applying the unfairness test from *Camacho*).

Plaintiffs assert two separate theories of unfair conduct. First, they focus on HP's alleged misrepresentation and omission regarding the defects of the computers in suit. (FAC ¶ 42.) This theory is inadequate for the reasons discussed above: Plaintiffs have not alleged with specificity any misrepresentation or a duty that could render HP liable for an omission. Because Plaintiffs have failed to allege cognizable injury resulting from the alleged misrepresentation and omission, they also have failed to allege substantial injury. Second, Plaintiffs assert that HP's failure adequately to repair the computers in suit in response to consumers' complaints is unfair. (FAC ¶ 44.) Essentially, this theory mirrors Plaintiffs' breach of the express warranty claim.

"An injury may be sufficiently substantial . . . if it does a small harm to a large number of

people." *American Financial Services Asso. v. FTC*, 767 F.2d 957, 972 (D.C. Cir. 1985) (quotation omitted) (discussing substantial injury under 15 U.S.C. § 45(n)). HP allegedly failed to repair under warranty the Plaintiffs' computers, which cost between $1,199.00 and $1,378.99. (FAC ¶ 12-14.) As discussed above, the alleged defect does not render the computers in suit unusable, but it certainly reduces their value. Read in the light most favorable to Plaintiffs, the FAC alleges that HP sold many computers that exhibit the complained-of defect and have not been repaired. Accordingly, Plaintiffs sufficiently allege a substantial injury. Likewise, the FAC, as a whole, sufficiently alleges that the failure to repair under the express warranty is not outweighed by any countervailing benefits to consumers or competition.

Finally, Plaintiffs must show that the injury is one that consumers themselves could not reasonably have avoided. "[C]onsumers cannot have reasonably avoided the injury if they could not have reasonably anticipated the injury, if they did not have the means to avoid the injury, or if their free market decisions were unjustifiably hampered by the conduct of the seller." *Camacho*, 142 Cal. App. 4th at 1405. The internet postings, which discuss the issues with the computers in suit, are publicly available. However, it is not clear that Plaintiffs easily could have found the postings before purchasing their computers because they did not know specifically what the problems with the computers might be. Though it could be argued that Cmiral had the means to avoid injury by updating the BIOS on his computer, the FAC sufficiently alleges that the BIOS update would not have resolved the issues in any event. (FAC ¶ 11 (Kent installed the updated BIOS and continued to experience problems).)

**3. Fraudulent conduct**

"Unlike a common law fraud claim, a UCL fraud claim requires no proof that the plaintiff was actually deceived." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1025-26 (9th Cir. 2008) (citing *Daugherty*, 144 Cal. App. 4th at 838). "Instead, the plaintiff must produce evidence showing 'a likelihood of confounding an appreciable number of reasonably prudent purchasers exercising ordinary care.'" *Id.* at 1026, citing *Brockey v. Moore,* 107 Cal. App. 4th 86, 99 (2003). Accordingly, Plaintiffs must allege with specificity that HP's alleged misrepresentations: 1) were relied upon by the named plaintiffs; 2) were material; 3) influenced

the named plaintiffs' decisions to purchase the defective computers in suit; and 4) were likely to deceive members of the public. *See In re Tobacco II Cases*, 46 Cal.4th 298, 326-28 (2009).

Plaintiffs' UCL fraud claim is founded on the same basic allegations as their CLRA claim: that HP made misrepresentations and omissions regarding the computers in suit. As with their CLRA claim, the UCL fraud claim is deficient because Plaintiffs insufficiently plead a misrepresentation or a duty that obligated HP to disclose the defect. The statements within the warranty are not misleading because (1) HP only warranted to repair, replace, or refund in the event of a defect, not that the computers in suit would operate uninterrupted or error-free and (2) Plaintiffs insufficiently plead that HP knew that the computers in suit were defective at the time Plaintiffs purchased them. Further, as discussed above, Plaintiffs plead reliance inadequately for purposes of Fed. R. Civ. R. 9(b). Claims sounding in fraud must be pled with particularity. *See Ciba-Geigy*, 317 F.3d at 1103-04. Though Kent and Daugherty allege that they have visited HP's website which displays the warranty, they do not allege having reviewed the actual warranty before purchasing their computers. Cmiral and Johanning make entirely conclusory allegations of reliance.

**IV. ORDER**

Good cause therefor appearing, the motion to dismiss is GRANTED with leave to amend with respect to Plaintiffs' claims for breach of implied warranties, violation of the CLRA, and violation of the illegal and fraudulent conduct prongs of the UCL. The motion otherwise is DENIED. Any amended complaint shall be filed within thirty (30) days of the date of this order.

DATED: 7/6/2010

JEREMY FOGEL
United States District Judge